FILED
JAMES J. WALDRON, CLERK
NOV 07 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| In Re: <br><br> WILLIAM NOVAK, <br><br> Debtor | Case No.: 15-15102 – ABA <br><br> Adv. No.: 15-02330 – ABA |
| JOHN SABATINA and LISA SABATINA <br><br> Plaintiffs <br><br> v. <br><br> WILLIAM NOVAK, <br><br> Defendant | Chapter: 7 <br><br> Judge: Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is the adversary proceeding filed by plaintiffs John Sabatina and Lisa Sabatina objecting to discharge and dischargeability under sections 727(a)(3), (4) and 523(a)(2)(A) of title 11 of the United States Code (the "Bankruptcy Code"). The court finds that the Plaintiffs presented sufficient evidence necessary to meet their burden of proof under section 727(a)(3) and thus denies discharge. As the court finds discharge should be denied under section 727(a)(3), it need not make any determination under sections 727(a)(4) and 523(a)(2)(A).

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The debtor, William Novak, filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on March 23, 2015. On November 3, 2015, the Sabatinas filed this adversary proceeding seeking the denial of discharge of a certain debt under section 523(a)(2)

and objecting to the discharge of the Debtor under paragraphs (3) and (4) of section 727(a) of the Bankruptcy Code.

A trial was held on September 7, 2016 and both parties submitted post-trial briefs on October 14, 2016. The following are the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

There are precious few established facts in this case. The relevant facts that have been established necessary for this court's determination are that Mr. Novak represents himself as a home improvement contractor licensed in New Jersey. At various times Mr. Novak operated under the names Mill Run Contractors and Mill Run Builders, which Mr. Novak testified were both unincorporated businesses (TR at 14:23-15:2[1]). He further testified to having worked for Mill Run Construction and Mill Run Developers (TR at 21:5-8 and 40:6). While operating as Mill Run Builders in February of 2007, Mr. Novak signed a contract with the Plaintiffs whereby Mr. Novak agreed to demolish an existing kitchen and build a two-story addition onto the Plaintiffs' real property located at 204 East Louisville Avenue in Wildwood Crest, New Jersey (the "Wildwood Property"). Mr. Novak promised he was capable of and intended to complete the work in a professional manner. Finding the work was unsatisfactory, the Plaintiffs filed suit in the New Jersey Superior Court against Mr. Novak on January 30, 2009, alleging, among other things, fraudulent misrepresentation and violations of the Consumer Fraud Act. On February 11, 2011, a settlement agreement was reached whereby Mr. Novak would pay $25,000 over a 26-month period to the Plaintiffs and, in the event he defaulted on this obligation, the Plaintiffs could seek a judgment for $38,000. Mr. Novak defaulted without making any payments towards the settlement and the Plaintiffs obtained a judgment for the full amount on August 5, 2011. Post judgment discovery ensued. Testimony was obtained. Transfers suspected to be fraudulent transfers were uncovered.

On March 23, 2015, Mr. Novak filed a voluntary petition (the "Petition") for bankruptcy protection under Chapter 7 of the Bankruptcy Code. The Petition listed no interest in any real property on Schedule A, and listed only clothing and a 1992 van totaling $1,500 worth of personal property on Schedule B. On Schedule I, Mr. Novak listed $1,300 in wages, and separately listed $1,000 of income from rental property and operation of a business or a farm despite there being no real property, business or farm interest listed on the Petition. In addition, Mr. Novak did not list an ownership or interest in any businesses within the last six years on his Statement of Financial Affairs. However, Mr. Novak's tax returns show he owned and operated the business Mill Run Builders as of 2013. Finally, on Schedule J, Mr. Novak listed $1,750 per month for home ownership expenses, $300 towards electricity, heat and gas, $50 towards water and sewer, and $80 towards telephone and cable.

After the Petition was filed, Mill Run Contractors published, in July 2015, an advertisement for construction services listing Mr. Novak's personal contractor license number with the State of New Jersey.

---

[1] The transcript of the one-day trial will be referred to as "TR at page(s):line(s)."

## CONCLUSIONS OF LAW

Section 727(a)(3) of the Bankruptcy Code states that the court shall grant the debtor a discharge, unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3); *In re Kinard*, 518 B.R. 290, 301 (Bankr. E.D. Pa. 2014).

The purpose of section 727(a)(3) of the Bankruptcy Code is to ensure that a debtor provides the trustee and his or her creditors with sufficient information to "'ascertain the debtor's financial condition and track his [or her] financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Id.* (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). A "discharge under § 727(a) is a 'privilege, not a right', that is reserved for the honest debtor who has dealt fairly with the court and his creditors." *In re Jackson*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011) (citing *In re Spitko,* 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006)). As a precondition to the bankruptcy discharge, section 727(a)(3) requires a debtor to produce enough information for creditors to determine and track the debtor's financial and business transactions for a reasonable time prior to the bankruptcy. *In re Jackson*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996)).

When a party objects to the discharge of a debtor, that party bears the initial burden of proving that the case falls within one of the statutory exceptions to discharge. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992). However, once a prima facie showing of inadequate record keeping is made by the creditor, "the burden of going forward to establish *justification* for inadequate recordkeeping rests with the debtor." *In re Boyajian*, 486 B.R. 306, 312 (Bankr. D.N.J. 2013), *as corrected* (Feb. 6, 2013) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230–31 (3d Cir. 1992)) (emphasis in original).

### A. A Failure to Maintain Records

In order to state a prima facie claim under 727(a)(3), a party objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992) (citing *In re Decker*, 595 F.2d 185, 187 (3d Cir.1979). Significantly, intent is not an element to make a case under 727(a)(3). *In re Spitko*, 357 B.R. 272, 305 (Bankr. E.D. Pa. 2006). "Intended concealment of a debtor's financial condition by failure to maintain appropriate records need not be established to deny discharge per § 727(a)(3) (mere failure to maintain recorded information being sufficient)." *In re Boyajian*, 486 B.R. 306, 312 (Bankr. D.N.J. 2013) (citing *Meridian Bank v. Alten*, 958 F.2d at 1234.

The standard for what constitutes a "failure to maintain" and preserve adequate records was defined by the Second Circuit in *In re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S. Ct. 9, 81 L. Ed. 402 (1936). *Meridian Bank v. Alten*, 958 F.2d at 1230. The

*Underhill* court emphasized that what constituted sufficient record keeping varied with the facts of each case, but in all cases complete disclosure was required. *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992).

> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

*Meridian Bank v. Alten*, 958 F.2d at 1230 (quoting *In re Underhill,* 82 F.2d 258, 259-60 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S. Ct. 9, 81 L. Ed. 402 (1936)).

In determining whether the failure to keep records makes it impossible to ascertain a debtor's financial condition, the Third Circuit ruled that the test is whether "there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained." *Meridian Bank v. Alten*, 958 F.2d at 1230 (quoting *In re Decker,* 595 F.2d 185, 187 (3d Cir. 1979)). In the *Meridian* case, the Third Circuit overturned a bankruptcy court's grant of discharge after finding the debtors maintained "scant or no records of their business, professional or personal transactions" *Id.* at 1228.

Other courts have described it in the following manner: "A debtor's records must be such that '[c]reditors . . . [are] not [ ] forced to undertake an independent investigation of a debtor's affairs.' " *In re Capponi*, 508 B.R. 908, 924–25 (Bankr. E.D. Pa. 2014) (quoting *United States v. Ellis,* 50 F.3d 419, 424 (7th Cir. 1995)); *see also In re Juzwiak,* 89 F.3d 424, 429 (7th Cir. 1996) (same); *see also PNC Bank v. Buzzelli (In re Buzzelli),* 246 B.R. 75, 96–97 (Bankr. W.D. Pa. 2000) (same). Further, oral testimony is not a substitute for written records. *In re Capponi*, 508 B.R. 908, 925 (Bankr. E.D. Pa. 2014) (same).

> The statute places an affirmative duty on the debtor to create books and records accurately documenting his financial affairs. *See Juzwiak,* 89 F.3d 424, 429 (7th Cir. 1996) ("The debtor has the duty to maintain and retain comprehensible records."). Especially pertinent in this matter, the creditors are not required to accept a debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. *See id.* at 429–30.

*In re Self,* 325 B.R. 224, 241 (Bankr. N.D. Ill. 2005). Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate records. If the debtor fails to do so, there must be some justification. *Meridian Bank v. Alten*, 958 F.2d at 1230-31 (3d Cir. 1992). Further, the debtor cannot rely wholly on unsubstantiated oral testimony regarding his business dealings to satisfy his record keeping requirement. *In re Spitko,* 357 B.R. at 306.

While it is clear that what the debtor is required to keep is very much determined on a case-by-case basis, a debtor's failure to produce documents when requested regarding his business transactions is often looked upon as the basis for denial of discharge. For example, in *In re Jackson*, the court found the creditor had met its burden under section 727(a)(3) where the debtor, president of a closely held corporation, produced only a five-year-old federal corporate income tax return and the company's incomplete bank statements from one year. 453 B.R. 789 (Bankr. E.D. Pa. 2011). The court found it was impossible to determine the source of company's income or nature of its expenses from bank statements, and even though debtor promised that she would ask a specific individual to provide any relevant materials in his possession if they existed, she provided no further information about him, and she never supplemented her production of corporate records. *Id.*

In this case, Mr. Novak provided his personal tax returns for the years leading up to the bankruptcy filing. The Plaintiffs requested but did not receive any records regarding the profit and losses of the business, or any bank accounts maintained by the business. Further, Mr. Novak does not have any business bank accounts in his name and did not produce any other records of his personal finances. Mr. Novak failed to produce any business records when the Plaintiffs subpoenaed them.

Further, during the deposition of Mr. Novak on October 18, 2015, he was asked, "How did you keep records of what cash you received for jobs done by Mill Run Builders?" and Mr. Novak testified, "I didn't keep records." (TR at 39:1-10). At trial, Mr. Novak clarified his record keeping practice by stating, "I would give everything to my accountant, whatever I had. I mean, I didn't keep them." (TR at 39:11-12). Mr. Novak also testified that this was the reason he did not produce any records of the businesses when the Plaintiffs subpoenaed them, because "I thought you meant did I have any records there, like, at my disposal." (TR at 39:13-17).

However, even assuming this explanation was acceptable, it is undercut by other testimony he gave at the deposition. When Mr. Novak was asked whether he gave information to H&R Block so that they could prepare his tax returns he testified, "They ask, 'how much money did you make that year in construction?' and I tell them, and that's what I pay the taxes on." (TR at 40:22-41:6). Mr. Novak repeated this answer when asked at his deposition "there's no documents to support that?" and he testified "No." During the trial, Mr. Novak contradicted this testimony and stated, "I probably had to give them documents, whatever they needed to do that year's income tax." (TR at 41:23-24). This inconsistent testimony makes it difficult to determine precisely what record keeping practices Mr. Novak did have. However, the fact remains that he did not turn over <u>any</u> records to the Plaintiffs when they were subpoenaed.

Similarly inconsistent and sometimes directly contradictory answers were given at trial when Mr. Novak was questioned regarding whether he had any records for Mill Run Contractors, Mill Run Construction or Mill Run Builders over the last 6 years Mr. Novak responded "They haven't really doane hardly any work." (TR at 37:4-7). When pressed further on this, Mr. Novak then testified that "I'm sure there are records when I filed my tax returns for those years." (TR at 37:16).

Beyond this inconsistent testimony regarding his financial records for the businesses, Mr. Novak did not give clear answers regarding his personal financial records. He was unable to explain where the $1,000 per month of income from operation of a business listed on his Schedule I came from. Further, his testimony is unclear and at times contradictory concerning the expenses listed on his Schedule J. His answers at trial were different than those given during his deposition, and it is still not clear what expenses he has or how much he pays in personal expenses on a monthly basis. Similarly, Mr. Novak was unclear regarding the transfer of certain assets he owned. When asked whether he owned any businesses within the 6 years prior to 2015, Mr. Novak testified "I don't – I'm not sure the date that she took over the business back then. It was years ago." (TR at 36:24-37:1). He was unable to explain why his 2013 tax returns indicate he did in fact own Mill Run Builders as recently as 2013.[2] There also was a business that at some point was transferred to his brother, and then transferred back before being transferred to his wife, but Mr. Novak was not clear on the dates for any of this. (TR at 24:2-22). Similarly, when he was questioned regarding the disposition of the scaffolding he owned that was not listed on his Petition, Mr. Novak testified "I think my son sold it." (TR at 78:6). Mr. Novak's testimony is uncorroborated and he appears to have no actual records of any of this, and did not turn any over when subpoenaed by the Plaintiffs.

However, Mr. Novak maintains that he does not own any businesses, and has not for the past several years despite the evidence to the contrary. If the court accepts this, and accepts that his disclosure on his 2013 tax returns of income generated from the ownership of Mill Run Builders is false, and further accepts that his listing of income on Schedule I was similarly inaccurate, it is still troubling that Mr. Novak maintained scant or no records of his business or personal transactions. Given the opportunity to supplement the record, he produced nearly nothing. He has made it impossible to ascertain his financial condition. Unquestionably, the Plaintiffs have proven that Mr. Novak failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

### B. Justification for Failure to Maintain Records

Once a prima facie showing of inadequacy is made by the creditor, "the burden going forward to establish *justification* for inadequate recordkeeping rests with the debtor." *In re Boyajian*, 486 B.R. at 312 (citing *Meridian Bank v. Alten*, 958 F.2d at 1230–31) (emphasis in original).

The principal import of the *Meridian Bank* opinion is its standard for determining whether failure to keep records is justified. *In re Boyajian*, 486 B.R. at 312. Determination of justification for inadequate documentation includes consideration of: (1) debtor's education; (2) debtor's sophistication; (3) volume of debtor's business; (4) complexity of debtor's business; (5) amount of credit extended to debtor in his business; (6) any other circumstances that should be noted in the interest of justice. *In re Boyajian*, 486 B.R. at 312 (*citing Meridian Bank v. Alten*,

---

[2] There was a two year period between the bankruptcy filing and the time when Mr. Novak last reported an interest in a business which is certainly a reasonable period of time to ascertain the present financial condition of Mr. Novak and his business transactions.

958 F.2d at 1234). As previously noted, intent is not material to section 727(a)(3). *In re Spitko*, 357 B.R. at 305.

The Third Circuit has acknowledged that different record keeping practices are necessary depending on the sophistication of the debtor and the extent of his activities. *Meridian Bank v. Alten*, 958 F.2d at 1231; *see also In re Conde*, 386 B.R. 577 (Bankr. W.D. Pa. 2008) (finding that a debtor who had attended over three years of college and was a certified tool sales engineer designing an automated manufacturing process was sophisticated); *In re Rabinowitz*, No. 10-12538 DHS, 2012 WL 1072212, (Bankr. D.N.J. Mar. 29, 2012) (finding an architect that owned his own business was a sophisticated debtor).

Noting that the burden is on Mr. Novak to establish that he was justified in failing to keep any records of his financial and business transactions, this court finds there is little support to justify Mr. Novak's failure. There was no evidence introduced regarding Mr. Novak's education. The evidence of the volume of his business was inconsistent. Mr. Novak testified that he had not operated a business in years, but also listed on Schedule I of his Petition that he earned $1,000 a month from the operation of a business. Further, when asked if he had any records for Mill Run Contractors, Mill Run Construction or Mill Run Builders for the last 6 years, Mr. Novak stated, "They haven't really done hardly any work." (TR at 37:4-7). There was also no evidence of the complexity of Mr. Novak's business, or the amount of credit extended. However, regarding Mr. Novak's sophistication, there was evidence introduced by both parties that Mr. Novak has owned and operated several contracting businesses, and by his own testimony has been involved in the contracting business for almost 50 years. The Third Circuit has stated, "sophisticated business persons are generally held to a high level of accountability in recordkeeping." *Meridian Bank v. Alten*, 958 F.2d at 1231. Several courts have found a debtor's operation of a business as an important factor in determining its sophistication. *See In re Kinard*, 518 B.R. 290, 304–05 (Bankr. E.D. Pa. 2014) (finding that the debtor may lack some business acumen, but that she operated and managed the business with her mother or her brother, and because the company would have been required to maintain financial records so that it could file tax returns every year, the debtor must be knowledgeable regarding the importance of maintaining and preserving financial records).

Mr. Novak's post-trial brief argues that the Internal Revenue Service only requires a taxpayer to keep records for three years from the time a return is filed. (Doc. No. 17.) He does not cite to any regulations, instead including a link to an IRS webpage. He further argues that he no longer has the records because he has not had any income from construction work during the past several years. However, there is an inherent flaw in this argument: the IRS webpage states that three years is the appropriate length of time to keep these records unless you file a fraudulent tax return. Mr. Novak's 2013 tax return shows he did in fact earn income from construction work operating Mill Run Builders, meaning he should have all these records as that was less than three years ago, unless this was a fraudulent return. Further, it is hard to argue that this justifies the failure to have any records related to any of Mr. Novak's businesses or personal transactions.

Given that the burden is on Mr. Novak to establish justification, the court finds he has failed to do so. There was no evidence or testimony introduced to satisfactorily explain Mr. Novak's failure to maintain records in this case. Indeed, Mr. Novak's argument appears to be

that he was not required to maintain records of any kind because he did not own a business at the time of the filing. Mr. Novak could have easily produced evidence, other than his elusive testimony, which would have corroborated his testimony. Mr. Novak could not state when the business was transferred to his wife, although he stated it was years ago, and at different times stated that he had no records for any other businesses but that he may have given his accountant some records. No viable explanation was given as to why Mr. Novak was unable to retrieve his financial information from his professionals. Most significantly, the purpose of section 727(a)(3) of the Bankruptcy Code is to ensure that a debtor provide his or her creditors with sufficient information to ascertain his or her financial condition and track his or her financial dealings with substantial completeness. After a full trial and inconsistent, unresponsive and elusive testimony from Mr. Novak, his financial condition is still very unclear to the court.

The bankruptcy discharge is the entitlement of the "honest" debtor, or at least the debtor who finally "comes clean" in bankruptcy court. *In re Topakas*, 202 B.R. 850, 861–62 (Bankr. E.D. Pa. 1996), *aff'd sub nom. Liccio v. Topakas*, No. 96-1154, 1997 WL 158197 (E.D. Pa. Mar. 31, 1997). As a result, credibility is relevant to each of the provisions of Section 727. *In re Somerville*, 73 B.R. 826, 838 (Bankr. E.D. Pa. 1987). Several courts in this circuit have found ". . . the issue of credibility to be crucial in a § 523(a)(2) matter, as well as a § 727(a) matter." *In re Mistry*, 77 B.R. 507, 512 (Bankr. E.D. Pa. 1987). Ultimately, "disposition of dischargeability complaints turns largely on the credibility of the parties." *In re Glen,* 115 B.R. 837, 842 (Bankr. E.D. Pa. 1990) (quoting *In re Butler,* 86 B.R. 829, 831 (Bankr. E.D. Pa. 1988)). "The lack of credibility of a Debtor in his statements before this bankruptcy court are ultimately crucial, because we believe that honesty is necessary in a Debtor's dealings with this court if he desires to obtain this benefit of discharge made available to all *honest* debtors." *In re Somerville*, 73 B.R. 826, 834–35 (Bankr. E.D. Pa. 1987) (emphasis in original); *Compare In re Gaebler*, 83 B.R. 264, 260 (Bankr. E.D. Pa.), *rev'd,* 88 B.R. 62 (E.D. Pa. 1988) (debtor credible; debt discharges) with *In re Mistry,* 77 B.R. 507, 510, 512–13 (Bankr. E.D. Pa. 1987), *aff'd sub nom. Writer v. Mistry,* C.A. No. 87-6466 (E.D. Pa. Feb. 9, 1988); and *In re Somerville,* 73 B.R. 826, 833, 837, 838 (Bankr. E.D. Pa. 1987) (debtors not credible; debts not discharged).

The court observed Mr. Novak as he repeatedly contradicted himself in testimony given under oath. Further, at times he failed to provide any satisfactory explanation for factual circumstances or evidence presented that seemed to directly contradict his given testimony, such as his failure to explain why his 2013 tax returns indicate he was operating a business when he testified he had not operated any business in the last 6 years, or why there were advertisements for a business that he testified ceased operations. What is troubling is that it seems that Mr. Novak could have easily corroborated his testimony about his ownership interests in the business, or rather the transfer or lack of his ownership interest in the business, by producing someone or something confirming same, but he simply chose not to. The credibility of Mr. Novak's uncorroborated testimony flies in the face of the factual circumstances such as the 2013 tax return and the continued use of his personal contractor license after the Petition. Mr. Novak's proffer that it was simply a mistake, without more, does not convince this court especially in light of the contradicting testimony throughout the case.[3] Finally, other explanations Mr. Novak gave for his failure to provide requested documents are unimaginable, such as his statement that

---

[3] The Court also takes judicial notice of at least 4 prior bankruptcies filed by Mr. Novak and as such, is skeptical of any claim of ignorance as to what is required of a debtor in a bankruptcy case.

H&R Block took and kept his financial records and that is why he failed to provide them upon request. In the end, Mr. Novak's testimony, contradictory, elusive or otherwise, is improbable and does not assist him in providing a justification for his failure to maintain records from which his financial condition or business transactions might be ascertained. Consequently, on the record before it, the court finds that Mr. Novak's discharge must be denied under section 727(a)(3) of the Bankruptcy Code.

## CONCLUSION

The Plaintiffs have met their burden of proof under section 727(a)(3) by a preponderance of the evidence and consequently, the court denies discharge as to Mr. Novak. As the court finds discharge should be denied under section 727(a)(3), it need not make any determination under sections 727(a)(4) and 523(a)(2)(A).

An appropriate Order has been executed simultaneously herewith.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 7, 2016